UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| DAVID HARDIN | () | NO. 6:14-CV-00224 (LEAD) |
| | () | NO. 6:14-CV-00228 (MEMBER) |
| | () | |
| VERSUS | () | |
| | () | |
| | () | |
| IBERIA PARISH SHERIFF OFFICE, | () | |
| ET AL. | () | MAGISTRATE JUDGE |
| WHITEHURST | | |

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
SUBMITTED BY DEFENDANT, CODY LAPEROUSE, INDIVIDUALLY
AND AS A FORMER DEPUTY OF IBERIA PARISH, LOUISIANA

NOW INTO COURT, through undersigned counsel, comes Cody Laperouse, individually and as a former Deputy Sheriff of Iberia Parish, who, with respect, sets forth the following as his Proposed Findings of Fact and Conclusions of Law:

1.      The incidents forming the subject of this litigation occurred at approximately 2:00 o'clock A.M. Sunday, September 29, 2013 on South Hopkins Street in New Iberia, Louisiana between its intersections with Lombard Street to the south and Robertson Street to the north.

2.      On September 28-29, 2013, plaintiff Butler, his mother, his wife and three (3) of the Butler's children lived with plaintiff Hardin, his wife and four (4) children in the Hardins' four (4) bedroom home located at 1607 St. Jude Ave., New Iberia, Louisiana, which is approximately twelve (12) to fourteen (14) blocks away from the scene of the arrests of the plaintiffs.

1

3.      Plaintiff Hardin left his home about 11:00 o'clock P.M. September 28th and made his way to the scene of the incidents.

4.      Plaintiff Hardin had drunk some beer at least a few hours prior to the incidents.

5.      Plaintiff Butler, who was 6'5" tall and about 235 pounds, left the Hardin house about midnight or 1:00 o'clock A.M, September 29, 2013.

6.      At approximately 1:42 A.M. on September 29, 2013, the Iberia Parish Sheriff's Dispatcher dispatched a call for assistance at 620 South Hopkins Street due to the report of a fight near the business known as the Red Barn, which is on the east side of said street.

7.      Numerous Deputies Sheriff responded to said dispatch, parking their vehicles on Lombard Street near its intersection with South Hopkins, exited their units and walked north toward the Red Barn but found no fight in progress.

8.      Former Deputy Cody Laperouse met with other Deputies near the Red Barn and decided since the Sugar Cane Festival festivities were officially over and traffic was so congested it could not move and the 600 block of South Hopkins Street, the adjacent sidewalks and adjoining property were packed with dozens, if not hundreds, of people loitering. The Deputies decided that they would move in a northerly direction so as to look for the reported fight(s) and to clear the streets, sidewalks and surrounding area of vehicles and people.

9.      Deputy/Co-defendant August headed the team moving north on the west side of South Hopkins Street, which team included Deputies/co-defendants, Prejean and Laperouse, as well as Deputies, witnesses, Spurlock and Freyou.

10.     Deputy/Co-defendant Prejean was a K-9 officer who was accompanied at all times pertinent hereto by his canine which he had on a leash.

11.     Plaintiff Hardin knew it was time to go home when he saw the deputies' police units arriving.

12.     Upon encountering a small group of men which included plaintiff Hardin, who was about 6' 4" tall and weighed 240 pounds, Dep. Prejean gave loud and clear verbal commands to clear the sidewalk and move on.

13.     Plaintiff Butler, who was not with plaintiff Hardin's group, knew it was time to clear the area and go home when he saw the Deputies moving his way up South Hopkins Street.

14.     Plaintiff Hardin refused to obey the commands to clear the area and after light hand pressure to the small of his back and further commands from Dep. Prejean to move on, plaintiff Hardin whirled around and directed profane and threatening language against Dep. Prejean, thereby inciting various men in the area to yell profanities, whereupon Dep. Prejean decided to arrest plaintiff Hardin but was superseded by Sgt. August who handcuffed plaintiff Hardin and had Dep. Freyou escort him to Dep. Freyou's police unit.

15.     Plaintiff Butler did not see the encounter of plaintiff Hardin with the Deputies, nor did he see Hardin's arrest, but rather, a member of Butler's immediate group advised Butler that Hardin had been arrested, whereupon Butler decided to approach the Deputies and demand to know why Hardin was arrested.

16.     Sgt. August and other Deputies instructed plaintiff Butler to leave the area, but he refused, became profane and was yelling words to the effect that the crowd did not have to leave, whereupon the crowd did not move.

17.     Although Sgt. August intended to arrest plaintiff Butler, due to the crowd, Dep. Laperouse was closer and he placed Butler under arrest and attempted to handcuff him but was met with resistance which resulted in Butler being maneuvered against a parked vehicle so as to be handcuffed.

18.     Plaintiff Butler continued his verbal and physical resistance to the Deputies after being handcuffed and placed on the ground and refused to lie prone at Dep. Laperouse's command so as to present a lower profile for projectiles such as bottles which were being thrown and bullets which were being fired ostensibly at law enforcement from hitting Butler.

19.     Plaintiff Butler sat on the ground next to the parked vehicle after being handcuffed and at one point attempted to stand.

20.     Dep. Laperouse, after giving plaintiff Butler verbal commands to remain prone on the ground, struck plaintiff Butler on the back of his right leg between his buttocks and knee no more than three (3) times in order to prevent his fleeing, for his Butler's own protection, and to possibly interfere with the actions of the Deputies who literally were under attack from the crowd. This use of force by Dep. Laperouse was within his use of force continuum.

21.     Dep. Freyou transported plaintiff Hardin to the Sheriff's Patrol Center.

22.     Dep. Laperouse transported plaintiff Butler to the Patrol Center.

23.     Neither of the plaintiffs complained of injuries to Deputies.

24.     Dep. Prejean completed a 48 Hour Affidavit for a Sheriff's Office Confinement Order on September 29, 2013 for plaintiff Hardin to the effect that Hardin violated Louisiana Revised Statutes Title 14, Sections 100.1, 63.3, 329.2, 122 and 103.

25.     Sgt. August completed a 48 Hour Affidavit for a Sheriff's Office Confinement Order on September 29, 2013 for plaintiff Butler to the effect that Butler violated Louisiana Revised Statutes Title 14, Sections 329.1, 108.2, 108(B)(1)(D).

26.     Applicable Louisiana criminal law is as follows:

   A.     "La. R.S. 14:63.3. **Entry on or remaining in places or on land after being forbidden.**

      a)     No person shall without authority go . . . upon or remain . . . upon or attempt to go . . . upon or remain . . . upon . . . immovable property, which belongs to another . . . after having been forbidden to do so, either orally or in writing . . . by any other authorized person . . . ."

   B.     "La. R.S. 14:100.1. **Obstructing public passages.**

      a)     No person shall willfully obstruct the free, convenient and normal use of any public sidewalk, street *** by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon. . . ."

   C.     "La. R.S. 14:103. **Disturbing the peace.**

      a)     Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:

         (1)     Engaging in a fistic encounter; or
         (2)     Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to

prevent him from pursuing his lawful business, occupation, or duty; or

(3)    Appearing in an intoxicated condition; or

(4)    Engaging in any act in a violent and tumultuous manner by any three or more persons; or

(5)    Holding of any unlawful assembly . . . ."

D.    "La. R.S. 14:108. **Resisting an officer.**

a)    Resisting an Officer is the intentional interference with, or opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention . . . when the offender knows or has reason to know that the person arresting, detaining . . . is acting in his official capacity.

b)

(1)    The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:

(d)    Congregation with others on a public street and refusal to move on when ordered by the officer."

E.    "La. R.S. 14:108.2. **Resisting a police officer with force or violence.**

a)    Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining . . . or is otherwise acting in the performance of his official duty:

(1)    Using threatening force or violence by one sought to be arrested or detained before the arresting officer can restrain him and after notice is given that he is under arrest or detention.

(2)    Using threatening force or violence toward or any resistance or opposition using force or violence to the arresting officer after the arrested

        party is actually placed under arrest and before he is incarcerated in jail.

    (3)    Injuring or attempting to injure a police officer engaged in the performance of his duties as a police officer.

    (4)    Using or threatening force or violence toward a police officer performing any official duty.

    b)    For purposes of this Section, "police officer" shall include any commissioned police officer, sheriff, deputy sheriff . . ."

F.    "La. R.S. 14:329.1. **Riot.**

"A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property."

G.    "La. R.S. 14:329.2. **Inciting to riot.**

"Inciting to riot is the endeavor by any person to incite or procure any other person to create or participate in a riot."

27.    The acts of the deputy defendants in relation to plaintiffs were not excessive.

As stated in *Nazerzadeh v. Harris County* (U.S.D.C.S.D.Tex. Sept. 27, 2010), 2010 U.S.

Dist. LEXIS 101365; 2010 WL 3817149 at p. 12:

"To hold a municipality (or sheriff) liable in an episodic-act-or-omission case, a plaintiff must establish not only that a municipal (Sheriff's) employee acted with subjective deliberate indifference but also that the employee's act resulted from a policy or custom adopted or maintained by the municipality (or sheriff) with deliberate indifference to the plaintiff's constitutional rights.   See *Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir.1999).* (Parenthetical material added)

The Court went on:

"To state a claim for unconstitutionally excessive force, a plaintiff must allege: (1) an injury; which (2) resulted directly and only from the use of force that

was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.   *Goodson v. City of Corpus Christi, 202 F.3d 730,735 (5th Cir. 2000); Ikerd v. Blair, 101 F.3d 430, 433 (5th Cir. 1996)* *** the factors relevant to an excessive force claim are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response.   A constitutional violation does not occur with every touching or contact. *Id.* '*Eighth Amendment's* prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind"' *Id.* at 9-10.   The amount of force must be judged in the context in which it is used.  See *id.* at 9 (quoting *Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), Cert. Denied, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973)).*"

28.    That in light of the aforementioned actions of plaintiffs and the defendants, probable cause existed at the times of arrests of the plaintiffs for violation of at least one of the criminal statutes reflected on the aforementioned Confinement Orders and supporting Affidavits pertinent to the respective plaintiffs.   Therefore, the defendants' defense of qualified or good faith immunity shields the defendants from liability herein.

The theory of qualified immunity protects an officer when he acts reasonably under the circumstances, in light of clearly established law and the information which he knew at the time of his actions.  The officer's subjective state of mind, *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183, (5th Cir. 1990), is not relevant to the qualified immunity inquiry.  *Anderson v. Creighton*, 438 U.S. 635, 641 (1987).   Individuals have the right to be free from unlawful arrest or detentions under the Fourth Amendment to the United States Constitution.  *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 278 (5th Cir. 1992).   In order to protect this right, police officers are required to make determinations of probable cause prior to arresting a person without a warrant. *Duckett*, 950 F.2d at 278.   Probable cause exists if "'at the moment

the arrest was made ... the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that the suspect had violated a criminal statute. *Hunter v. Bryant*, 502 U.S. 224, 228 112 S.Ct. 534, 537, 116 L.Ed. 2d 589 (1991) (Parenthetical information added) quoting *Beck v. Ohio*, 379 U.S. 89, 91 85 S.Ct. 223, 225, 13 L.Ed. 2d 142 (1964).   The qualified immunity defense is not reserved for the perfect officer: if the officer reasonably but mistakenly concludes that probable cause exists, the defense is still available. *Hunter*, 502 U.S. at 227; *Anderson*, 483 U.S. at 641.  The Supreme Court has stated that:

> "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases, those officials -- should not be held personally liable. Anderson, 483 U.S. at 641.  There is substantial room for mistakes in judgment by police officers as the qualified immunity doctrine applies to "all but the plainly incompetent or those who knowingly violate the law".  *Hunter*, 502 U.S. at 299 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Further, the court should not inquire as to "whether a reasonable, or more reasonable, interpretation of the events can be constructed." *Hunter*, 502 U.S. at 227.   Also, the fact that the defendant is later absolved of guilt in regard to the offense for which he was arrested is not relevant to the qualified immunity inquiry. *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). Finally, if reasonably competent officers could disagree about the lawfulness of Dep. Laperouse's actions in this case, he is still entitled to qualified immunity. *Gibson*, 44 F.3d at 274; *Babb*, 33 F.3d at 472; *Johnson*, 14 F.3d at 1059 (citation omitted).

29.    Plaintiffs have no justiciable claims based upon language directed to them by any of the deputy defendants although it is not clear that any such language is attributed to any specific defendant.  As stated in *McFadden v. Luca*, 713 F.2d 143, 146 (5th Cir.), *Cert. den.*

464 U.S. 998 (1983), "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." Although *McFadden* has been somewhat limited, any such limitations would not impose liability in this case. *Nor* would such comments be actionable under Louisiana law. As stated in *White v. Monsanto Co.*, 91-0148 (La. 9/9/91), 585 So.2d 1205, 1209:

> "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."

30. Defendant Laperouse should not be held liable in tort herein should this Honorable Court entertain pendent jurisdiction. Louisiana's Court of Appeal, Third Circuit dealt with allegations of negligence as to a police officer by, among other things, "allowing Mrs. Courville to get behind the wheel of a car and onto the road." In *Courville v. City of Lake Charles*, 98-73 (La.App. 3 Cir. 10/28/98), 720 So.2d 789, 797. The Court there stated at pages 797-798 as follows:

> "Police officers have the duty of maintaining peace and order, preventing and detecting crime, and enforcing laws. *Zeagler v. Town of Jena,* 556 So.2d 978, (La.App. 3 Cir.), *writ denied*, 560 So.2d 14 (La. 1990), The duty is owed to the public in general but may be transformed into a duty to an individual where a personal or individual relationship arises between the officer and an individual through closeness in proximity or time. *Id.* Generally, a police officer, in carrying out his authority to enforce laws, has the duty to act reasonably to protect life and limb, to refrain from causing injury or harm and to exercise respect and concern for the well-being of those whom he is employed to protect. *Keller v. City of Plaquemine,* 96-1933 (La.App. 1 Cir. 9/23/97); 700 So.2d 977. The supreme court has addressed the duty owed by an officer when approaching a subject prior to disarming him or effectuating arrest. See *Stroik,* 699 So.2d 1072; *Matthieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94); 646 So.2d 318; *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977). In such cases, the duty is one of reasonableness under the totality of the circumstances. See *id.* We note that *Stroik, Matthieu* and *Kyle* involved the issue of

excessiveness of force, and we find the pursuit issue sufficiently analogous to allow application of the standard employed in those cases.  In *White v. City of Baker*, 95-2009 (La.App. 1 Cir. 5/17/96); 676 So.2d 121, *writ denied*, 96-1547 (La. 9/27/96); 679 So.2d 1351, the first circuit held that the same standard was applicable in a situation in which an officer was attempting to apprehend an individual who disobeyed a police order and was fleeing from the officer, which ended with the fleeing vehicle overturning and killing a guest passenger. However, the claim arising from the coastal Store encounter is more properly characterized as the failure to use sufficient force to detain Mrs. Courville.  In any event, the same standard of reasonableness should apply, albeit with the application of different factors.  Thus, we will analyze the duty issue in terms of reasonableness under the totality of the circumstances.  We note that the officers' actions need not be the 'best' method of approach; rather, the standard of care requires choosing only a course of action that is reasonable under the circumstances.  See *Matthieu*, 646 So.2d 318."

There, the Third Circuit affirmed the lower Court's determination that the police officers did not breach the standard of reasonableness regarding their speed in pursuing Mrs. Courville as she escaped from the scene of a robbery.  The actions of the defendant Laperouse in the case *sub judice* similarly did not breach the standard of reasonableness under the circumstances.

31.     Should the Court entertain plaintiffs' allegations of tort liability pursuant to its pendent jurisdiction, defendant Laperouse is not liable for false arrest or imprisonment. Louisiana's First Circuit stated in *Jackson v. Young*, 10-1832 (La.App. 1 Cir. 6/17/11), 2011 La. App. Unpub. LEXIS 368 at p. 14:

"Police officers who act pursuant to statutory authority in arresting and incarcerating a citizen are not liable for damages for false arrest or imprisonment.  *Wolfe v. Wiener Enterprises, Inc.*, 94-2409 (La. 1/13/95), 648 So.2d 1293, 1296.  Furthermore, LSA – R.S. 9:2798.1 provides immunity to police officers in the 'exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties'".

32.     Should the Court entertain pendent jurisdiction and find fault on the part of any of the deputy defendants, the actions of the plaintiffs should be considered so as to reduce

11

liability pursuant to comparative negligence which has been plead as an affirmative defense. Louisiana's Second Circuit pointed out in *Nelson v. City of Shreveport*, 40,494 (La.App. 2 Cir. 1/27/06), 921 So.2d 1111, pointed out that in a situation involving police tort feasors, "the proper inquiry is to compare official offenders who are provoked with official offenders who are not" citing *Koon v. U.S.*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).  In *Nelson*, the Court:

> "considered the following factors in assessing the nature of the parties' conduct and the extent of the causal relation between the conduct and the damage claimed:  (1) Whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the inferior and superior capacities of the act; and, (5) any extenuating circumstances which might require the actors to proceed in haste, without proper thought.  See *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967 (La. 1985).  *Id.* at p. 11.

**RESPECTFULLY SUBMITTED:**

*s/ William F. Dodd*
**WILLIAM F. DODD, #4978 (T.A.)**
**W. SETH DODD, # 30882**
**DODD LAW FIRM**
100 Ramey Road, Suite A
P. O. Box 950 (70361)
Houma, Louisiana  70360
Tel:  (985) 876-2427
Fax:  (985) 876-7316
Attorney for defendant, Cody Laperouse

## **CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing pleading has been served upon all parties receiving electronic service notification via the Court's CM/ECF System and Non-CM/ECF participants via U. S. Mail, on this 7th day of November, 2016.


*/s William F. Dodd*
WILLIAM F. DODD